Filed 7/30/26  Panilag v. Contreras CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| MANUEL PANILAG,<br><br>　　Plaintiff and Respondent,<br><br>　　v.<br><br>ARMANDO CONTRERAS,<br><br>　　Defendant and Appellant. | H052685<br>(Santa Clara County<br>Super. Ct. No. 24CV434290) |

In the underlying civil proceedings, plaintiff Manuel Panilag has alleged various real property and tort causes of action, including a claim for financial elder abuse, against Armando Contreras arising out of the transfer of Panilag's residential property.  Contreras appeals from a right to attach order (RTAO) granted in favor of Panilag pursuant to Panilag's cause of action for financial elder abuse.

Contreras argues that the trial court erred in issuing the RTAO because Panilag failed to present "substantial evidence of wrongdoing or incapacity" nor was there substantial evidence of the probable validity of Panilag's claims.

As we explain below, Contreras has failed to meet his burden on appeal. We will affirm the order.

# I.     FACTUAL AND PROCEDURAL BACKGROUND

On April 2, 2024, Panilag filed a verified complaint in Santa Clara County Superior Court (Case No. 24CV434290) asserting causes of action for quiet title, fraud in the inception, conversion, cancellation of deed, financial elder abuse, unjust enrichment, declaratory relief, and imposition of a constructive trust.  In his complaint, Panilag alleged that he suffered from dementia and other cognitive impairments, and due to those issues failed to make his monthly mortgage payments on his residence.  In 2023, Panilag's mortgage lender recorded a notice of default and initiated foreclosure proceedings.  Contreras learned of the notice of default and, under the pretense of assisting Panilag with paying the approximately $32,000 due on his mortgage, instead had Panilag execute a grant deed transferring his property to Contreras's business entity, New Chance LLC.  Panilag alleged that, at the time of this transfer, his property was worth approximately $1 million, and he had over $600,000 in equity in that property.  In exchange for executing the grant deed, Panilag received $3,000.

On July 30, 2024, Panilag applied for an RTAO, seeking an attachment under Welfare and Institutions Code section 15657.01.[1]  In support of that application, Panilag submitted the following documents:[2] (1) a declaration from a real estate broker, J. Robert Taylor; (2) a declaration from his daughter, Jean Ng; (3) his own declaration; and (4) a declaration from his attorney, Paymon Hifai.  Panilag also requested that the trial court take judicial notice of a declaration from

---

[1] Unspecified statutory references are to the Welfare and Institutions Code.

[2] Contreras did not identify any of these documents in his notice designating the record on appeal so none of them appear in the clerk's transcript that was filed in this case.  As discussed below, we are granting Panilag's request to augment the record on appeal to include these documents.  According to the register of actions for this case, each of these documents was filed along with Panilag's application for an RTAO.

his treating physician, Dr. Peter L. Nguyen, which had been previously filed with Panilag's opposition to Contreras's (unsuccessful) motion to compel arbitration.

J. Robert Taylor's declaration set forth his qualifications and experience regarding real estate transactions and valuations. In Taylor's opinion, Panilag's property was worth $995,000 in February 2024.

In her declaration, Ng stated that Panilag was diagnosed with Alzheimer's and dementia in 2021 and his "ability to understand and process information" was "severe[ly] impair[ed]." Ng declared that her father always planned on remaining in his home for the rest of his life. She stated that he does not remember signing documents to transfer title to his property and does not recall discussing a sale of the property with anyone. Ng further declared that emails—purportedly from her father related to the sale of the property—originated from email addresses that do not belong to her father, and he has never used those addresses to communicate with her or anyone else she knows. Ng also points out that, in one document executed by Contreras, he falsely claims that he is related to Panilag. To her knowledge, her father does not know Contreras.

In his personal declaration, Panilag stated that he never intended to sell his home, does not recall meeting with or talking to anyone about such a sale, and does not remember signing documents to effectuate a sale of his home. When Panilag was shown the grant deed and notice of default purchase agreement, he does not remember signing those documents and does not understand them. If he did sign those documents, Panilag states that it was because he was "tricked" into doing so.

Hifai, Panilag's attorney, authenticated the exhibits attached to his declaration, including among other things, documents produced by a title company in which Contreras certified that the property transfer was a "gift to [a] family

3

member" by Panilag and documents showing that a fake email account was created to impersonate Panilag and sign DocuSign documents on his behalf.

Dr. Nguyen's declaration[3] stated that Panilag had been diagnosed with Alzheimer's and dementia in 2021 and continued to suffer from those impairments. Dr. Nguyen averred that, due to these conditions, Panilag was "substantially unable to manage his financial resources or resist fraud or undue influence from at least August 2023 to date." Specifically, Dr. Nguyen opined that Panilag "could not understand and appreciate the consequences of signing documents contemplating selling his home, or the rights, duties and responsibilities created or affected by such an action; or the risks, benefits and alternatives to the same." When Dr. Nguyen evaluated Panilag, he had no memory of selling his home, having discussions relating to selling his home, or signing any documents effectuating such a sale.

In his opposition, Contreras argued that the application for an RTAO should be denied for the following reasons: (1) Panilag failed to demonstrate that the amount of his claim is "readily ascertainable," (2) Panilag failed to demonstrate that Contreras engaged in financial elder abuse, (3) Panilag failed to demonstrate that Contreras is indebted to him in any way, and (4) the application is supported only by "conclusory or generalized statements." Contreras did not submit any declarations or other evidence in support of his opposition.

---

[3] The record does not indicate whether the trial court granted Panilag's request for judicial notice of this document. In the absence of any evidence to the contrary, we will presume that it did. "The trial court's findings of fact and conclusions of law are presumed to be supported by substantial evidence and are binding on the appellate court, unless reversible error appears on the record. [Citation.]" (*Bond v. Pulsar Video Prods.* (1996) 50 Cal.App.4th 918, 924.)

Following a hearing,[4] on October 17, 2024, the trial court issued the RTAO against Contreras in the amount of $1,005,000.

Contreras timely appealed.

## II. DISCUSSION

### A. Panilag's motion for summary affirmance or, in the alternative, to augment record on appeal

After Contreras filed his opening brief in this appeal, Panilag filed a motion for summary affirmance or, in the alternative, to augment the record on appeal. In his motion, Panilag argues that Contreras failed to include any of the evidence submitted to the trial court in support of Panilag's application for the RTAO and therefore this court should summarily affirm the RTAO due to Contreras's failure to provide an adequate record. In the alternative, Panilag asks that this court augment the record to include the documents set forth in the Respondent's Appendix, which consist of the declarations and other evidence submitted in the trial court regarding the RTAO.

Contreras opposed both the motion for summary affirmance and the request to augment the record. As to the motion for summary affirmance, Contreras argues that his appeal "raises substantial, meritorious questions of law concerning" the RTAO. As to Panilag's request to augment, Contreras argues that the "certified Clerk's Transcript already contains the orders, filings, declarations, and evidentiary materials the trial court actually relied upon in issuing the RTAO." He asserts that the request to augment consists of "documents that were never

---

[4] The record does not contain a minute order from this hearing, so we do not know if a court reporter was in attendance. If so, Contreras elected not to provide the reporter's transcript, nor did he prepare an agreed statement or a settled statement relating to this hearing. (See Cal. Rules of Court, rule 8.120(b), unspecified rule references are to the Cal. Rules of Court.)

presented to, relied upon, admitted by, or considered by the trial court in issuing the [RTAO]."

This court deferred ruling on Panilag's motion for consideration with this appeal.

Litigants are required to provide the appellate court with pertinent legal arguments and appropriate references to the record. (Cal. Rules of Court, rule 8.204(a); *Renden v. Geneva Development Corp.* (1967) 253 Cal.App.2d 578, 591.) "The appellate court is not required to search the record on its own seeking error." (*Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 768.) Those requirements apply with equal force to parties representing themselves. (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984.) It is also well-settled that the "[appellant] has the burden of providing an adequate record. [Citation.] Failure to provide an adequate record on an issue requires that the issue be resolved against [appellant]." (*Hernandez v. California Hospital Medical Center* (2000) 78 Cal.App.4th 498, 502.)

When a party fails to follow the rules of appellate procedure, the reviewing court may impose various consequences, including treating an appellate claim as abandoned, or summarily affirming the trial court's judgment. (See, e.g., *Rossiter v. Benoit* (1979) 88 Cal.App.3d 706, 710–711 [treating appellate claim as abandoned]; *Copfer v. Golden* (1955) 135 Cal.App.2d 623, 634–635 [discussing summary affirmance].) We may also disregard the noncompliance, and we elect to do so here. (Rule 8.204(e)(2)(C).)

When Contreras filed this appeal, he elected to proceed without a record of the oral proceedings in the superior court but elected to file both an appendix and a clerk's transcript. For unexplained reasons, Contreras did not file an appendix and the clerk's transcript did not include a copy of the RTAO, but instead included a copy of a notice of entry of an order granting Panilag's motion to compel

6

discovery responses.[5]  Panilag's application for the RTAO is included in the clerk's transcript but without any of the supporting declarations.[6]

Rule 8.155(a) provides for augmentation of a record on appeal in order to "supplement an incomplete but existing record. …"  (*People v. Brooks* (1980) 26 Cal.3d 471, 484, citing former rule 12].)  The rule "is to be construed liberally." (*Ibid*.)  All that is required is that the moving party establish with some certainty how the requested materials may be useful to that party on appeal; "[t]he showing of 'some certainty' must be made as to the *manner* in which the materials may be useful, not as to the contents of the materials themselves."  (*People v. Gaston* (1978) 20 Cal.3d 476, 482.)

Because the documents included in Panilag's Respondent's Appendix were before the trial court and are relevant to our consideration of the issues raised on appeal, we grant Panilag's request to augment the record.  As discussed in more detail below, those documents, along with Panilag's brief in support of the RTAO, are relevant to our assessment of whether Contreras's claims lack substantive merit.

### B. Contreras's request for judicial notice, motion to augment record on appeal

On December 17, 2025, Contreras requested that this court take judicial notice of 16[7] documents "pursuant to Evidence Code §§ 452(c), 452(d), and 459.

---

[5] It appears that this is because Contreras's notice designating the record on appeal erroneously informed the superior court clerk that the "[j]udgment or order appealed from" was filed on "10/21/2024," which is the date that notice of entry of the discovery order was filed.  The RTAO was filed on October 17, 2024. Because a copy of the RTAO is attached to Contreras's civil case information statement, we will overlook its omission from the clerk's transcript.

[6] As noted above, all of these documents are listed in the register of actions with the same filing date as Panilag's application for an RTAO.

[7] Contreras's request asks that this court take judicial notice of "fifteen documents ('RJN-1' through 'RJN-15') that are relevant to issues raised in this

7

These documents are part of the trial court record, are official acts of the executive branch, or are records whose accuracy cannot reasonably be questioned. Judicial notice is proper and necessary for full consideration of the issues raised in this appeal." On that same day, Contreras filed a motion to augment the record on appeal with the same 16 documents that are attached to his request for judicial notice. By separate order, this court deferred ruling on Contreras's request for judicial notice and motion to augment the record for consideration with this appeal.

### 1. Applicable law

A request for judicial notice in the court must be served and filed in a separate motion with a proposed order. (Rule 8.252(a)(1).) The motion must explain the relevance of the matter to the appeal; whether the matter to be noticed was presented to the trial court and whether judicial notice was taken; if the trial court did not judicially notice the matter, why the matter is subject to judicial notice under Evidence Code section 451, 452 or 453; and whether the matter concerns proceedings after the order or judgment that is the subject of the appeal. (Rule 8.252(a)(2).)

"Reviewing courts generally do not take judicial notice of evidence not presented to the trial court." (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3 (*Vons Companies, Inc.*).) Judicial notice should be taken only of relevant matters. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1135, fn. 1 (*Ketchum*); *Aquila, Inc. v. Superior Court* (2007) 148 Cal.App.4th 556, 569.)

---

appeal and necessary for proper resolution of the questions presented." However, there are 16 documents attached to his request.

Further, "[w]hile we may take judicial notice of the existence of judicial opinions, court documents, and verdicts reached, we cannot take judicial notice of the truth of hearsay statements in other decisions or court files [citation], or of the truth of factual findings made in another action." (*Johnson & Johnson v. Superior Court* (2011) 192 Cal.App.4th 757, 768.) The same rules apply when taking judicial notice of official acts and public records. " '[T]he taking of judicial notice of the official acts of a governmental entity does not in and of itself require acceptance of the truth of factual matters which might be deduced therefrom, since in many instances what is being noticed, and thereby established, is no more than the existence of such acts and not, without supporting evidence, what might factually be associated with or flow therefrom.' " (*Mangini v. R. J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063–1064 (*Mangini*), disapproved on another ground in *In re Tobacco Cases II* (2007) 41 Cal.4th 1257, 1273.)

### 2. Analysis

Contreras contends judicial notice or augmentation is appropriate as to RJN-1, RJN-2, RJN-3, RJN-4, and RJN-5 because those documents consist of Panilag's "own communications with his lender" and "his written authorizations and emails to [r]ealtor [Sahand] Malaki." RJN-1 is a notice of trustee's sale notifying Panilag that his deed of trust was in default and his property was scheduled to be sold on March 25, 2024. RJN-2 and RJN-3 are loan reinstatement summaries issued by Panilag's mortgage loan servicer, Gregory Funding, dated April 27, 2023, and August 22, 2023, supposedly at Panilag's request. RJN-4 is an email dated September 19, 2023 from Malaki to Panilag asking if Panilag had located his "lender contact info" as Malaki needed to talk to them to "see how much time we have for selling the property or doing the loan modification."[8]

---

[8] Contreras characterizes this document as an "[e]mail dated September 18, 2023 from Respondent Manuel Panilag to real estate agent Sahand Malaki."

9

RJN-5 is a document entitled "Lender/Loan Service Provider Letter of Authorization," dated September 19, 2023, and purportedly signed by Panilag, authorizing Malaki to act as his agent. Contreras fails to explain whether these documents were presented to the trial court in the first instance as required by rule 8.252(a)(2) nor does he explain their relevance to the issue on appeal. (*Vons Companies, Inc.*, *supra*, 14 Cal.4th at p. 444, fn. 3; *Ketchum*, *supra*, 24 Cal.4th at p. 1135, fn. 1.) As these documents do not appear to have been presented to the trial court nor do they appear to be relevant, we deny both Contreras's request for judicial notice of them and his motion to augment the record to include them.

RJN-6 consists of a copy of Panilag's driver's license, which was renewed on January 16, 2024, and which indicates that there are no "restrictions" on his license. Contreras contends that judicial notice of these documents is appropriate since they are "official act[s] of the California Department of Motor Vehicles, a state executive agency" and thus fall within the judicial notice provisions of Evidence Code section 452, subdivision (c). This may be so, but Contreras fails to explain, among other things, whether these documents were presented to the trial court in the first instance as required by rule 8.252(a)(2). (*Vons Companies, Inc.*, *supra*, 14 Cal.4th at p. 444, fn. 3.) However, even if we were to take judicial notice of these documents as official acts or public records, we would not, as Contreras would have us do, conclude that Panilag had no impairments. Judicial notice of official acts and public records does not extend to " 'the truth of all matters stated therein.' " (*Mangini*, *supra*, 7 Cal.4th 1057 at pp. 1063–1064.) Accordingly, we decline to take judicial notice of RJN-6 or augment the record on appeal to include it.

---

However, while there appears to be a header at the bottom reflecting that Panilag sent an email to Malaki at 7:27 p.m. on September 18, 2023, there is no visible text underneath the header.

Contreras seeks judicial notice of the notarized grant deed executed by Panilag on February 15, 2024 (RJN-7). "A recorded deed is an official act of the executive branch, of which this court may take judicial notice." (*Ragland v. U.S. Bank National Assn.* (2012) 209 Cal.App.4th 182, 194.) However, while taking judicial notice of a grant deed is permissible under Evidence Code sections 452, subdivision (c) and 459, subdivision (a), we will only take judicial notice of matters that are relevant to the issues raised on appeal. (*Ketchum*, *supra*, 24 Cal.4th at p. 1135, fn. 1.) Contreras fails to explain how the notarized grant deed is relevant to the question of whether the trial court erred in issuing the RTAO. Therefore, we decline to take judicial notice of RJN-7 or augment the record on appeal to include it.

RJN-8, RJN-9, and RJN-10 consist of declarations submitted by Panilag in support of his application for an RTAO, specifically the declarations of Dr. Nguyen (RJN-8), Panilag (RJN-9), and Ng (RJN-10). We have already augmented the record to include these documents—all of which should have been included in the clerk's transcript—as part of Panilag's motion to augment and therefore deny as moot Contreras's RJN and motion to augment as to these documents.

In RJN-11, RJN-12, and RJN-13, Contreras seeks augmentation or judicial notice of deposition subpoenas and "evidence of [Panilag]'s counsel obstructing compliance." RJN-11 is a deposition subpoena served on Dr. Nguyen, RJN-12 is a deposition subpoena served on Ng, and RJN-13 consists of transcripts of Nguyen's and Ng's depositions reflecting their nonappearance as well as Panilag's objections, post-dating the dates of deposition, to the deposition subpoenas. Contreras fails to explain how these documents are relevant to the issue on appeal, namely whether the trial court erred in issuing the RTAO. (*Ketchum*, *supra*, 24 Cal.4th at p. 1135, fn. 1.) We do not see how these documents are relevant to this

11

proceeding and therefore deny Contreras's request to take judicial notice of them as well as his motion to augment the record with these documents.

RJN-14 and RJN-15 consist of declarations submitted by Contreras with his reply in support of his motion to compel arbitration. RJN-14 is a declaration of a realtor, Thomas Hutchins, describing his interactions with Panilag in connection with the sale of his residence to Contreras and attesting to Panilag's competence. RJN-15 is a declaration of Josie Martinez, who referred Panilag to Contreras and arranged to have a mobile notary go to Panilag's house to execute the sales documents. She also attested to Panilag's understanding of the transaction. While these documents were filed in the trial court, they were filed as part of Contreras's motion to compel arbitration and there is nothing in the record to indicate that Contreras either submitted them with his opposition to Panilag's request for an RTAO or asked that the trial court take judicial notice of them in relation to that proceeding. (*Vons Companies, Inc.*, *supra*, 14 Cal.4th at p. 444, fn. 3.) Consequently, we do not see how these documents are relevant to the issue on appeal (*Ketchum*, *supra*, 24 Cal.4th. at p. 1135, fn. 1), and we again decline to take judicial notice of these documents or augment the record to include them.

RJN-16 is a Code of Civil Procedure section 128.7, Safe Harbor Notice served by Hinshaw & Culbertson LLP upon Panilag's counsel relating to "frivolous claims filed against Sahand Malaki, Spencer Hsu, and eXp Realty of California." Contreras does not explain how this document is relevant, and we deny his request to take judicial notice of it and his motion to augment the record with it. (*Ketchum*, *supra*, 24 Cal.4th. at p. 1135, fn. 1)

### C. Substantial evidence supports the RTAO

Contreras argues that Panilag did not meet his burden to prove, by a preponderance of the evidence, that he was entitled to an RTAO. In essence, Contreras contends that the trial court erred by crediting Panilag's evidence in

12

support of the request for an RTAO and discounting the "significant evidence offered" by Contreras in rebutting the claim of elder abuse.

We disagree.

### 1. Applicable legal principles and standard of review

The procedure for obtaining writs of attachment is delineated in Code of Civil Procedure section 483.010 et seq. " ' "Attachment is an ancillary or provisional remedy to aid in the collection of a money demand by seizure of property *in advance of trial and judgment*." ' [Citation.] California's Attachment Law [citation] is purely statutory and is strictly construed. [Citation.] … [A] plaintiff seeking a right to attach order must show ' "the probable validity" ' of its claim. [Citation.] 'A claim has "probable validity" where it is more likely than not that the plaintiff will obtain a judgment against the defendant on that claim.' [Citation.]" (*Kemp Bros. Construction, Inc. v. Titan Electric Corp.* (2007) 146 Cal.App.4th 1474, 1476, fn. omitted.) In support of the application, the plaintiff must, among other things, present an affidavit or a verified complaint stating "that the attachment is sought to secure the recovery on a claim upon which an attachment may be issued" together with a "statement of the amount to be secured by the attachment." (Code Civ. Proc., § 484.020, subds. (a)–(b).) "[T]he amount to be secured by an attachment" is "[t]he amount of the defendant's indebtedness claimed by the plaintiff" (*id.*, § 483.015, subd. (a)(1)) plus allowable costs and attorney fees (*id.*, §§ 483.015, subd. (a), 482.110).

Section 15657.01 specifically authorizes pretrial attachment in financial elder abuse actions and reads in pertinent part as follows: "Notwithstanding Section 483.010 of the Code of Civil Procedure, an attachment may be issued in any action for damages pursuant to Section 15657.5 for financial abuse of an elder … as defined in Section 15610.30. The other provisions of the Code of Civil Procedure not inconsistent with this article [i.e., the Elder Abuse Act] shall govern

13

the issuance of an attachment pursuant to this section." "The Elder Abuse Act, a remedial scheme designed to protect a vulnerable class of citizens, is generally construed broadly in favor of plaintiffs seeking relief on behalf of elders [citation], while the Attachment Law, which authorizes 'a harsh remedy [that] … causes the defendant to lose control of his property before the plaintiff's claim is adjudicated' [citation], is generally construed strictly according to the letter of its statutory terms. [Citations.]" (*Royals v. Lu* (2022) 81 Cal.App.5th 328, 344–345 (*Royals*).)

Under the Elder Abuse Act, financial abuse occurs when a person: (1) takes (appropriates, obtains, etc.) real or personal property of an elder "for a wrongful use or with intent to defraud, or both" (§ 15610.30, subd. (a)(1)); (2) assists in the taking of the same "for a wrongful use or with intent to defraud" (*id.*, subd. (a)(2)); and/or (3) takes real or personal property of an elder "by undue influence," as defined in section 15610.70." (§ 15610.30, subd. (a)(3); *Levin v. Winston-Levin* (2019) 39 Cal.App.5th 1025, 1034 (*Levin*)).

Section 15610.30, subdivision (b) provides that: "A person or entity shall be deemed to have taken, secreted, appropriated, obtained, or retained property for a wrongful use if, among other things, the person or entity … knew or should have known that this conduct is likely to be harmful to the elder or dependent adult." Section 15610.70, subdivision (a) defines "undue influence" as "excessive persuasion that causes another person to act or refrain from acting by overcoming that person's free will and results in inequity." In determining whether undue influence was used, the statute requires consideration of four factors: the vulnerability of the victim (*id.*, subd. (a)(1)); the influencer's apparent authority, which may be evidenced by a fiduciary, family, or care provider relationship (*id.*, subd. (a)(2)); the actions or tactics used by the influencer, which may include use of affection, intimidation, or coercion, and initiation of changes in personal or property rights (*id.*, subd. (a)(3)); and the equity of the result (*id.*, subd. (a)(4)).

14

(*Levin, supra*, 39 Cal.App.5th at p. 1035; see also *Mahan v. Charles W. Chan Ins. Agency, Inc.* (2017) 14 Cal.App.5th 841, 867.)

"The trial court must issue a right to attach order if it finds, among other things, that '[t]he plaintiff has established the probable validity of the claim upon which the attachment is based.' " (*Pech v. Morgan* (2021) 61 Cal.App.5th 841, 854, quoting Code Civ. Proc., § 484.090, subd. (a)(1).) Such probable validity is established "where it is more likely than not that the plaintiff will obtain a judgment against the defendant on that claim." (Code Civ. Proc., § 481.190.) The court must also find that "[t]he attachment is not sought for a purpose other than the recovery on the claim upon which the attachment is based." (Code Civ. Proc., § 484.090, subd. (a)(3).) We review the trial court's finding of probable validity for substantial evidence. (*Santa Clara Waste Water Co. v. Allied World National Assurance Co.* (2017) 18 Cal.App.5th 881, 885.)

Under the substantial evidence standard, reviewing courts do " 'not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts.' " (*In re Caden C.* (2021) 11 Cal.5th 614, 640.) Instead, "the appellate court's power begins and ends with a determination of whether there is any substantial evidence" (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 582, (*Schmidt*))—that is, " ' "evidence that is reasonable, credible and of solid value." ' " (*People v. Ramirez* (2022) 13 Cal.5th 997, 1118.) In determining whether a finding is supported by substantial evidence, appellate courts "view the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference and resolving all conflicts in its favor. [Citation.]" (*Schmidt*, at p. 582.) Consequently, a party arguing that a finding is not supported by substantial evidence faces a " ' "daunting burden." ' " (*Padideh v. Moradi* (2023) 89 Cal.App.5th 418, 438.)

15

## 2. Analysis

### a. Contreras's arguments

In his opening brief, Contreras identified the following two issues for appellate review: "1. The lower Court reversibly erred because the [RTAO] [w]as [i]mproper and there is insufficient evidence to support the probable validity of [Panilag]'s claims against … Contreras.  [¶]  2. Whether the lower court reversibly erred when it granted [Panilag]'s [RTAO] when it is not likely that [Panilag] will obtain a judgment against … Contreras on his claims?"[9]

---

[9] In his reply brief, Contreras identifies a total of *seven* issues that he contends should be reviewed on appeal: (1) "Whether the trial court reversibly erred in granting the [RTAO] where the order was based solely on self-serving, unauthenticated declarations submitted in anticipation of litigation, rather than admissible, competent evidence establishing the probable validity of Respondent's claims"; [¶] (2) "Whether the trial court improperly accepted hearsay medical opinions attributed to [Dr. Nguyen] a declaration lacking identifying information, authentication, and mandatory reporting compliance and treated it as substantial evidence of incapacity despite contradictory objective evidence of [Panilag]'s demonstrated competence"; [¶] (3) "Whether [Panilag] failed to meet his statutory burden under Code of Civil Procedure §§ 483.015 and 484.090 by not proving an ascertainable claim amount, a valid underlying debt, or a reasonable probability of success on the merits—rendering the attachment legally unsupportable"; [¶] (4) "Whether the trial court violated [Contreras]'s right to due process under the Fourteenth Amendment by issuing a prejudgment attachment exceeding $1,000,000 without competent evidence, without affording [Contreras] a fair opportunity to challenge the declarations relied upon, and without applying the strict statutory requirements governing attachment"; [¶] (5) "Whether the trial court erred in permitting attachment against [Contreras] personally absent any finding and absent any evidence supporting an alter-ego theory or justifying the extraordinary remedy of piercing the corporate veil of New Chance LLC"; [¶] (6) "Whether the weight of the undisputed factual record including [Panilag]'s repeated independent financial communications, DMV license renewal, execution of legal instruments, and interactions with third-party real estate professionals—conclusively rebuts [Panilag]'s claim of dementia or incapacity at the time of the transaction"; and [¶] (7) "Whether [Panilag]'s misrepresentations in the Respondent's Brief, and reliance on materials not in the appellate record, may properly be considered on appeal."  To the extent some or all of these seven issues were not raised in Contreras's opening brief, we will not consider them.  Absent a

16

Contreras argues that Panilag failed to meet his burden of proving, by a preponderance of the evidence, his right to an order of attachment. In support of this argument, Contreras challenges the evidentiary sufficiency of: (1) Panilag's verified complaint, describing it as "replete with boilerplate recitation[s] of financial elder abuse"; and (2) Dr. Nguyen's declaration for failing to provide Dr. Nguyen's "medical credentials," his "medical license number," his "medical office address," his "board certif[ications]," if any, or his "area of specialization." Contreras also challenges Panilag's Alzheimer's diagnosis by proffering evidence that Panilag "completed a competency test at the DMV and renewed his driver's license in January 2024, approximately 30 days prior to knowingly executing and notarizing a real estate contractual agreement."

Pointing to his memorandum of points and authorities in opposition to the RTAO, Contreras avers that he "presented uncontested evidence" to the trial court demonstrating that: (1) Panilag had been in default on his mortgage since 2009 and sold the property to avoid foreclosure; (2) Contreras paid "over $59,000 in arrears and approximately $10,000 in closing costs" so that Panilag and his family could continue to live on the property; and (3) that Panilag's "statements at the time, as well as third-party witnesses, confirmed that [Panilag] was lucid and understood the nature of the transaction."

To the extent that Contreras is arguing that the trial court failed to consider the "significant evidence" he presented in opposition to Panilag's request for an RTAO, the register of actions shows that he presented *no* evidence with his opposition briefing. Nor can he rely on the arguments made in his opposition points and authorities, because those are not evidence. "Citing points and

---

showing of good cause, an appellate court "need not consider new issues raised for the first time in a reply brief." (*In re Marriage of Ackerman* (2006) 146 Cal.App.4th 191, 214.)

17

authorities filed in the trial court is not appropriate support for factual assertions in a brief. Points and authorities are not presented under penalty of perjury. Matters set forth in points and authorities are not evidence. [Citation.] Evidence appears elsewhere—in deposition testimony, discovery responses, and declarations." (*Alki Partners, LP v. DB Fund Services, LLC* (2016) 4 Cal.App.5th 574, 590.) The only *evidentiary* document Contreras cites in the clerk's transcript is a declaration from Malaki. However, that declaration was prepared and filed in connection with Contreras's *motion to compel arbitration*, not his opposition to Panilag's request for an RTAO. Consequently, there is nothing in the record to indicate that the trial court had this declaration before it when it considered Panilag's application for an RTAO.

Contreras makes a number of other arguments in his briefing that rely on purported facts outside the record but it is well-settled that statements in appellate briefs based on such unsupported facts are to be disregarded by an appellate court. (*Kendall v. Barker* (1988) 197 Cal.App.3d 619, 625.) Because Panilag's evidence was uncontroverted, Contreras cannot now argue that it was insufficient to support any of the findings required under the Attachment Law (Code Civ. Proc., § 481.010 et. seq.) as authorized under section 15657.01.

Furthermore, Contreras's claims are speculative and unsupported by the record. The record does not show that the trial court failed to perform its duty to consider the evidence presented in ruling on the request for an RTAO. (Cf. *In re M.V.* (2025) 109 Cal.App.5th 486, 518 [rejecting appellant's complaints, unsupported by citations to the record, concerning juvenile court's conduct, including assertions it "acted as an advocate, … attempted to prevent the expert witness from testifying, mischaracterized witness testimony, and relied on speculation rather than evidence to ignore [testimony of] a witness"].)

### b. Substantial evidence supports the RTAO

18

In association with his request for an RTAO, Panilag filed the following declarations: (1) from Taylor, a realtor who opined on the value of the property; (2) from Dr. Nguyen, his physician, who stated that Panilag suffered from Alzheimer's and dementia at the relevant times; (3) from Ng, his daughter, who described Panilag's impaired cognitive abilities as well as that certain emails purportedly from Panilag were from addresses he did not use; (4) his own declaration stating that he has never intended to sell his home; and (5) from his attorney, authenticating several documents including one which falsely states that the property transfer was a "gift to [a] family member" by Panilag and another showing that a fake email account was employed to sign DocuSign documents on Panilag's behalf.  There is no indication in the record that Contreras objected to any of these declarations, either prior to or at the hearing on Panilag's request for an RTAO.[10]

An application for an attachment must include a statement of the "amount to be secured by the attachment."  (Code Civ. Proc., § 484.020, subd. (b).) "[W]hat the Legislature intended when it required attachment applicants to specify the 'amount' to be attached (Code Civ. Proc., § 484.020, subd. (b)) is that they state 'a fixed or readily ascertainable amount' ([Code Civ. Proc.,] § 483.010, subd. (a)), whether in contract actions or in any other action where attachment is authorized by statute."  (*Royals*, *supra*, 81 Cal.App.5th at p. 351.)  Thus, in

---

[10] As a general rule, "a party objecting to the admission of evidence must press for an actual ruling or the point is not preserved for appeal."  (*People v. Hayes* (1990) 52 Cal.3d 577, 619; but see *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 517, 532 [where written evidentiary objections are properly filed before summary judgment hearing, they are not waived by trial court's failure to rule].)  There are no written objections to Panilag's evidence in the record and, to the extent that Contreras orally objected to the evidence at the hearing on the RTAO, he failed to provide this court with any transcript of that hearing.

19

seeking attachment pursuant to a claim for financial elder abuse, the applicant meets this requirement by alleging a defined amount of compensatory damages as well as a basis for determining those damages. In this case, Panilag's prayer for relief sought "damages including general, compensatory and consequential damages according to proof at the time of trial … including but not limited to the fair market value of the Property in an amount no less than $1,000,000 plus costs of suit." In support of his application for a writ of attachment, Panilag offered Taylor's declaration opining that the property is valued at $995,000. Contreras neither objected to Taylor's declaration or offered any contrary evidence regarding the property's value.

Panilag's evidence also supported the "probable validity" of his financial elder abuse cause of action, specifically the declarations from his daughter and his treating physician attesting to his diminished mental capacity, his inability to understand the nature of the documents he signed, as well as the use of falsified email accounts to make it appear that Panilag intended to sell his property. Based on this evidence, the trial court could reasonably conclude that Panilag had shown it was more likely than not he would prevail on his claim of financial elder abuse, as these declarations tended to prove that Contreras took or assisted in taking Panilag's real property "for a wrongful use or with intent to defraud" (§ 15610.30, subds. (a)(1), (2)) or by "undue influence"[11] (§ 15610.30, subd. (a)(3)). Contreras

---

[11] As to "undue influence," Panilag's declarations showed, by a preponderance of the evidence, his vulnerability due to Alzheimer's and dementia (§ 15610.70, subd. (a)(1)), Contreras's actions or tactics in misrepresenting the nature of the real estate transaction to Panilag as "mortgage relief," (§ 15610.70, subd. (a)(3)), and the inequity of the result in which Panilag transferred title to his property, valued at nearly $1 million, in exchange for $3,000 (§ 15610.70, subd. (a)(4)).

did not object to these declarations below nor did he offer countervailing evidence of any kind.

Accordingly, the record contains substantial evidence to support the trial court's findings that Panilag established the probable validity of his claim for financial elder abuse as well as the amount of the claim upon which the attachment is based.

### III.    DISPOSITION

The order is affirmed.  Panilag shall recover his costs on appeal.

_____
WILSON, J.

WE CONCUR:


_____
GROVER, ACTING P. J.




_____
LIE, J.




*Panilag v. Contreras*
H052685